# United States District Court

FOR THE
**NORTHERN DISTRICT OF CALIFORNIA**

VENUE: SAN FRANCISCO

---

UNITED STATES OF AMERICA,

V.

CR 11-664 JSW

EBRAHIM SHABUDIN
and
THOMAS YU

DEFENDANT(S).

---

## SUPERSEDING INDICTMENT

18 U.S.C. § 1349 - Conspiracy to Commit Securities Fraud
18 U.S.C. § 1348 - Securities Fraud
15 U.S.C. § 78ff - Falsifying Corporate Books and Records
15 U.S.C. § 78ff - False Statements to Accountants
15 U.S.C. § 78ff - Circumventing Internal Accounting Controls
18 U.S.C. § 371 - Conspiracy to Commit False Bank Entries, Reports, and Transactions
18 U.S.C. § 1005 - False Bank Entries, Reports, and Transactions

---

A true bill.

_____ Chen _____
Foreman

Filed in open court this ___11___ day of

March 2014

_____
Clerk

Bail, $ no process required

_____
Nathanael Cousins
United States Magistrate Judge

PER 18 U.S.C. 3170

| DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT |
|---|

BY: ☐ INFORMATION ☑ INDICTMENT

Matter Sealed: ☐ Juvenile ☐ Other than Juvenile
☐ Pre-Indictment Plea ☑ Superseding ☐ Defendant Added
☐ Indictment ☐ Charges/Counts Added
☐ Information

Name of District Court, and/or Judge/Magistrate Location (City)
UNITED STATES DISTRICT COURT — San Francisco
DISTRICT OF Northern California — Divisional Office

Name and Office of Person Furnishing Information on THIS FORM: **MELINDA HAAG**
☐ U.S. Atty ☐ Other U.S. Agency
Phone No. _____

Name of Asst. U.S. Attorney (if assigned): Adam A. Reeves

## PROCEEDING

Name of Complainant Agency, or Person (& Title, if any)
FDIC-OIG, SIGTARP, Federal Reserve-OIG, and FBI

☐ person is awaiting trial in another Federal or State Court (give name of court)

☐ this person/proceeding transferred from another district per (circle one) FRCrP 20, 21 or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
☐ U.S. Atty ☐ Defense

SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant. (Notice of Related Case must still be filed with the Clerk.)
☐ prior proceedings or appearance(s) before U.S. Magistrate Judge regarding this defendant were recorded under

MAG. JUDGE CASE NO.

Place of offense: _____ County _____

---

CASE NO. CR 11-0664 JSW

USA vs.
Defendant: Ebrahim Shabudin

Address:

☐ Interpreter Required   Dialect: _____

Birth Date _____   ☐ Male ☐ Alien
                     ☐ Female (if applicable)

Social Security Number _____

## DEFENDANT

Issue: ☐ Warrant ☐ Summons

Location Status:
Arrest Date _____ or Date Transferred to Federal Custody _____

☐ Currently in Federal Custody
☐ Currently in State Custody
  ☐ Writ Required
☐ Currently on bond
☐ Fugitive

Defense Counsel (if any): _____
☐ FPD ☐ CJA ☐ RET'D
☐ Appointed on Target Letter

☑ This report amends AO 257 previously submitted

---

**OFFENSE CHARGED - U.S.C. CITATION - STATUTORY MAXIMUM PENALTIES - ADDITIONAL INFORMATION OR COMMENTS**

Total # of Counts: 7

| Set | Title & Section/Offense Level (Petty = 1 / Misdemeanor = 3 / Felony = 4) | Description of Offense Charged | Count(s) |
|---|---|---|---|
|  | PLEASE SEE ATTACHMENT FOR |  |  |
|  | PENALTIES |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

MELINDA HAAG (CABN 132612)
United States Attorney

J. DOUGLAS WILSON (DCBN 412811)
Chief, Criminal Division

ADAM A. REEVES (NYBN 2363877)
Assistant United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7157
FAX: (415) 436-7234
Adam.Reeves@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>EBRAHIM SHABUDIN and THOMAS YU,<br><br>Defendant. | Case No. CR 11-0664 JSW<br><br>VIOLATIONS: 18 U.S.C. § 1349 B Conspiracy to Commit Securities Fraud; 18 U.S.C. §1348 B Securities Fraud; 15 U.S.C. §§ 78m(b)(2)(A), 78m(b)(5), 78ff and 17 C.F.R. § 240.13b2-1 B Falsifying Corporate Books and Records; 15 U.S.C. § 78ff and 17 C.F.R. § 240.13b2-2 B False Statements to Accountants of a Publicly Traded Company; 15 U.S.C. §§ 78m(b)(2)(B), 78m(b)(5) and 78ff – Circumventing Internal Accounting Controls; 18 U.S.C.§ 1005 – False Bank Entries, Reports, and Transactions; 18 U.S.C. § 371 – Conspiracy to Falsify Bank Entries, Reports, and Transactions; 18 U.S.C. § 2 B Aiding and Abetting; 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461 B Forfeiture of Fraud Proceeds. |

## SUPERSEDING INDICTMENT

The Grand Jury charges:

I. Background

At all relevant times:

A. The Bank

1. United Commercial Bank (UCB) was a commercial bank headquartered in San Francisco, California, with branch offices throughout the United States as well as in China and Taiwan. UCB provided a full range of commercial and consumer banking products to businesses and individuals.

2. UCBH Holdings, Inc. (UCBH), a Delaware corporation, was the holding company for UCB. UCBH was a publicly traded company whose shares were registered with the United States Securities and Exchange Commission (SEC) and were traded on the National Association of Securities Dealers Automatic Quotation (NASDAQ) system under the symbol "UCBH." Hereafter, UCBH and UCB are referred to collectively as "the Bank."

3. As a public company, the Bank was required to comply with the SEC's rules and regulations, which were designed to protect the investing public. Under those rules and regulations, the Bank was required to (a) make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflected the transactions and disposition of the assets of the Bank; (b) devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that the Bank's transactions were recorded as necessary to permit preparation of financial statements in conformity with generally accepted accounting principles ("GAAP"); and (c) file annual reports with the SEC that contained audited financial statements that accurately and fairly presented the financial condition of the Bank, as well as other reports that contained information about the Bank's management, board of directors, business operations, and performance.

4. A public accounting firm acted as the independent auditor of the Bank's annual financial statements and reviewed the financial statements it filed quarterly.

5. The Bank was regulated by, among other agencies, the Federal Deposit Insurance Corporation (the FDIC). The FDIC required, among other things, that the Bank be adequately capitalized and safely managed at all times. The FDIC required that the Bank file quarterly financial

statements with the FDIC known as "call reports."

B. The Defendants

6. Defendant EBRAHIM SHABUDIN was a resident of Moraga, California, and an Executive Vice President of the Bank. From approximately September 2008 through April 2009, SHABUDIN served as the Bank's Chief Credit Officer and Chief Operating Officer.

7. Defendant THOMAS YU was a resident of San Ramon, California, and a Senior Vice President of the Bank. From approximately June 2008 through June 2009, YU served as the Bank's Manager of Credit Risk and Portfolio Management.

C. The Bank's Loan Loss Allowance

8. The Bank's business loans were booked as assets on the quarterly and annual financial statements filed with the SEC. Interest accrued on business loans was booked as revenue on those quarterly and annual financial statements.

9. The Bank assigned risk ratings to its loans. Each rating represented the current likelihood, based on all available information, that the borrower would pay the amount due under the borrower's loan agreement with the Bank. Changes in risk ratings were reflected in internal records specifically prepared for that purpose.

10. The Bank deemed a loan to be "impaired" if, based on all current information, it was probable that the Bank would be unable to collect all of the amounts due under the loan agreement. On a quarterly basis, the Bank represented to its regulators, its auditor, and the investing public that the Bank had estimated the total dollar amount of outstanding loans that the Bank would probably not collect from borrowers. This estimate, identified on the Bank's quarterly and annual financial statements as the "Allowance for Loan Losses" (hereafter, the "Loan Loss Allowance"), was derived from, among other things, the Bank's risk ratings as well as the value of the collateral securing the Bank's loans.

11. By decreasing the Loan Loss Allowance, the Bank increased net assets on the balance sheet and increased net income on the income statement. For this reason, the size of the Bank's Loan Loss Allowance was material to stock analysts and the investing public. The Bank's Loan Loss Allowance was also material to bank regulators such as the FDIC, which monitored the Bank's Loan Loss Allowance and total assets to ensure that the Bank was adequately capitalized.

D. The Bank's Expanding Loan Portfolio

12. Between 2004 and 2007, the Bank's loan portfolio increased from approximately $4.4 billion to more than $8 billion. By September 2008, the Bank's loan portfolio faced growing losses.

13. On or about October 3, 2008, Congress created the Troubled Asset Relief Program (the "TARP"), as part of the Emergency Economic Stabilization Act of 2008.

14. On or about November 14, 2008, the United States provided approximately $297 million in TARP funds to the Bank.

II. The Scheme to Defraud

A. Objectives of the Scheme to Defraud

15. Beginning in or about June 2008, SHABUDIN and YU, together with others, engaged in a fraudulent scheme to deceive the Bank, the investing public, depositors, the SEC, the Bank's auditor, and the Bank's regulators, including bank examiners with the FDIC, by manipulating the Bank's books and records in a manner that, as they well knew, (a) misrepresented and concealed the Bank's true financial condition and performance by falsifying the books and records so they did not fairly and accurately reflect, in all material respects, the transactions and dispositions of the assets of the Bank, and omitted facts necessary to make the books and records complete and accurate; and (b) caused the Bank to issue false and misleading statements and representations about its financial condition and performance, because such statements did not fairly and accurately, in all material respects, reflect the Bank's actual financial condition and performance, and omitted facts necessary to make those statements complete and accurate.

16. The objectives of the scheme to defraud were, among other things, to (a) conceal, delay, and avoid publicly reporting the number, and financial magnitude, of the Bank's impaired loans; (b) conceal, delay, and avoid publicly reporting the Bank's true loan losses; (c) mislead investors through false statements relating to information material to their decision to buy, sell, or hold the Bank's securities; (d) mislead depositors about information relevant to their decision to keep their funds at the Bank; and (e) mislead bank regulators, such as the FDIC, about whether the Bank was adequately capitalized and effectively managed.

B. Manner and Means of the Scheme to Defraud

17. In furtherance of the scheme to defraud, SHABUDIN and YU, and others, utilized a variety of fraudulent accounting maneuvers and techniques. Among other things, SHABUDIN and YU, and others, caused the Bank to:

(a) fraudulently conceal information showing the Bank's loan collateral and repossessed assets had declined in value;

(b) fraudulently rate the risk of certain loans; and

(c) fraudulently delay the downgrading of the risk ratings of certain loans.

18. As a further part of the scheme to defraud, SHABUDIN and YU, and others, falsified the Bank's books and records. Among other things, SHABUDIN and YU, and others, prepared and caused to be prepared various records and memoranda that both falsely described, and omitted material information necessary to accurately describe, the likelihood that loans would be repaid pursuant to the Bank's loan agreements and the value of the Bank's loan collateral and repossessed assets. As a consequence, the description of the Bank's loans and repossessed assets presented in those records and memoranda was false, misleading, and fraudulent.

19. As a further part of the scheme to defraud, SHABUDIN and YU, and others, misled and lied to the Bank's auditor. SHABUDIN and YU, and others, also failed to disclose to the Bank's auditor facts necessary to make their statements and representations complete and accurate. For example, SHABUDIN and YU, and others:

(a) misrepresented and caused to be misrepresented to the Bank's auditor records and memoranda that provided a materially false, misleading, and fraudulent description of various Bank loans and the collateral securing those loans;

(b) concealed and omitted from the Bank's records material information relating to the existence of recent appraisals of collateral that secured various Bank loans;

(c) concealed and omitted from the Bank's records material information relating to the value of repossessed assets and collateral; and

(d) concealed and omitted from the Bank's records material information relating to the

Bank's intention to sell various loans, as well as pending loan sales.

20. As a further part of the fraudulent scheme, SHABUDIN and YU, and others, caused the Bank to issue materially false and misleading public statements and reports regarding its financial condition and performance in, among other things:

(a) a press release issued on or about October 23, 2008;

(b) an earnings call held on or about October 24, 2008;

(c) a call report filed with the FDIC on or about November 4, 2008;

(d) a SEC Form 10Q filed with the SEC on or about November 10, 2008;

(e) a press release issued on or about January 22, 2009;

(f) an earnings call held on or about January 23, 2009;

(g) a call report filed with the FDIC on or about February 4, 2009;

(h) a SEC Form 10-K filed with the SEC on or about March 16, 2009;

(i) a press release issued on or about April 23, 2009;

(j) an earnings call held on or about April 24, 2009;

(k) a call report filed with the FDIC on or about May 5, 2009;

(l) a revised call report filed with the FDIC on or about May 22, 2009;

(m) a call report filed with the FDIC on or about August 6, 2009; and

(n) a press release issued on or about August 6, 2009.

21. On or about May 20, 2009, the Bank announced that the financial statements contained in its March 16, 2009 SEC Form 10-K were unreliable, withdrew those financial statements, and announced that it intended to restate them.

22. On or about November 6, 2009, the Bank failed without filing restated financial statements for the year 2008. As a result of the Bank's failure, the FDIC estimates that there will be approximately $1.1 billion in losses to the Deposit Insurance Fund. To date, none of the TARP funds have been repaid.

COUNT ONE: (18 U.S.C. § 1349 – Conspiracy to Commit Securities Fraud)

23. The allegations in Paragraphs 1 through 22 are realleged and incorporated as if fully set

forth here.

24. Beginning in or about June 2008, and continuing through in or about November 2009, both dates being approximate and inclusive, in the Northern District of California and elsewhere, the defendants,

**EBRAHIM SHABUDIN and
THOMAS YU,**

and others, did knowingly and intentionally attempt and conspire to execute a scheme and artifice to (a) defraud persons in connection with securities of UCBH, an issuer with a class of securities that was registered under Section 12 of the Securities Exchange Act of 1934, and (b) obtain, by means of materially false and fraudulent pretenses, representations and promises, and by omissions and concealment of material facts, money and property in connection with the purchase and sale of securities of UCBH, an issuer with a class of securities that was registered under Section 12 of the Securities Exchange Act of 1934, in violation of Title 18, United States Code, Section 1348.

All in violation of Title 18, United States Code, Section 1349.

COUNT TWO: (18 U.S.C. §§ 1348 and 2 – Securities Fraud)

25. The allegations in Paragraphs 1 through 22 are realleged and incorporated as if fully set forth here.

26. Beginning in or about June 2008, and continuing through in or about November 2009, both dates being approximate and inclusive, in the Northern District of California and elsewhere, the defendants,

**EBRAHIM SHABUDIN and
THOMAS YU,**

and others, did knowingly and intentionally execute, and attempted to execute, a scheme and artifice to (a) defraud persons in connection with securities of UCBH, an issuer with a class of securities that was registered under Section 12 of the Securities Exchange Act of 1934, and (b) obtain, by means of materially false and fraudulent pretenses, representations and promises, and by omissions and concealment of material facts, money and property in connection with the purchase and sale of securities

SUPERSEDING INDICTMENT
CR 11-0664 JSW

7

of UCBH, an issuer with a class of securities that was registered under Section 12 of the Securities Exchange Act of 1934, and did aid and abet in the same.

All in violation of Title 18, United States Code, Sections 1348 and 2.

COUNT THREE: (15 U.S.C. §§ 78m(b)(2)(A), 78m(b)(5), 78ff and 17 C.F.R. § 240.13b2-1; 18 U.S.C. § 2 – Falsifying Corporate Books and Records)

27. The allegations in Paragraphs 1 through 22 are realleged and incorporated as if fully set forth here.

28. Beginning in or about June 2008, and continuing through in or about November 2009, both dates being approximate and inclusive, in the Northern District of California and elsewhere, the defendants,

EBRAHIM SHABUDIN and
THOMAS YU,

and others, did knowingly and willfully, directly and indirectly, falsify and cause to be falsified books, records, and accounts of UCBH, and did aid and abet in the same.

All in violation of Title 15, United States Code, Sections 78m(b)(2)(A), 78m(b)(5) and 78ff; Title 17, Code of Federal Regulations, Section 240.13b2-1; and Title 18, United States Code, Section 2.

COUNT FOUR: (15 U.S.C. § 78ff and 17 C.F.R. § 13b2-2; 18 U.S.C. § 2 – False Statements to Accountants of a Publicly Traded Company)

29. The allegations in Paragraphs 1 through 22 are realleged and incorporated as if fully set forth here.

30. Beginning in or about June 2008, and continuing through in or about November 2009, both dates being approximate and inclusive, in the Northern District of California and elsewhere, the defendants,

EBRAHIM SHABUDIN and
THOMAS YU,

and others, did knowingly and willfully make and cause to be made materially false and misleading statements to UCBH's auditors in connection with the audit, review, and examination of UCBH's

financial statements, and in connection with the preparation of documents and reports required to be filed with the SEC, and did knowingly and willfully omit to state material facts necessary in order to make statements made, in light of the circumstances in which such statements were made, not misleading, and did aid and abet in the same.

All in violation of Title 15, United States Code, Section 78ff; Title 17, Code of Federal Regulations, Section 240.13b2-2; and Title 18, United States Code, Section 2.

COUNT FIVE: (15 U.S.C. § 78m(b)(2)(B), 78m(b)(5) and 78ff; 18 U.S.C. § 2 – Circumventing Internal Accounting Controls)

31. The allegations in Paragraphs 1 through 22 are realleged and incorporated as if fully set forth here.

32. Beginning in or about June 2008, and continuing through in or about November 2009, both dates being approximate and inclusive, in the Northern District of California and elsewhere, the defendants,

EBRAHIM SHABUDIN and
THOMAS YU,

knowingly and willfully circumvented and caused others to circumvent the systems of accounting controls required to be devised and maintained to provide assurances that transactions of the Bank were recorded as necessary to permit preparation of financial statements in conformity with GAAP and other relevant accounting principles, and did aid and abet in the same.

All in violation of Title 15, United States Code, Sections 78m(b)(2)(B), 78m(b)(5) and 78ff and Title 18, United States Code, Section 2.

COUNT SIX: (18 U.S.C. § 371 – Conspiracy to Commit False Bank Entries, Reports, and Transactions)

33. The allegations in Paragraphs 1 through 22 are realleged and incorporated as if fully set forth here.

34. Beginning in or about June 2008, and continuing through in or about November 2009, both dates being approximate and inclusive, in the Northern District of California and elsewhere, the defendants,

EBRAHIM SHABUDIN and
THOMAS YU,

and others, unlawfully, willfully, and knowingly, did conspire to commit an offense against the United States, namely, making false bank entries, reports, and transactions, in violation of Title 18, United States Code, Section 1005.

35. It was a part and object of the conspiracy that SHABUDIN, YU and others, unlawfully, willfully, and knowingly, directly and indirectly, made false entries in books, reports, and statements of the Bank with intent to injure and defraud the Bank, and deceive an officer of the Bank, the Comptroller of the Currency, the FDIC, an agent and examiner appointed to examine the affairs of the Bank, and the Board of Governors of the Federal Reserve System, in violation of Title 18, United States Code, Section 1005.

36. In furtherance of the conspiracy and to effect the illegal object thereof, SHABUDIN, YU, and others, committed and caused others to commit the following overt acts, among others, in the Northern District of California and elsewhere:

(a) filed a call report with the FDIC on or about November 4, 2008;

(b) filed a call report with the FDIC on or about February 4, 2009;

(c) filed a call report with the FDIC on or about May 5, 2009;

(d) filed a revised call report with the FDIC on or about May 22, 2009; and

(e) filed a call report with the FDIC on or about August 6, 2009.

All in violation of title 18, United States Code, Section 371.

COUNT SEVEN: (18 U.S.C. §§ 1005 and 2 – False Bank Entries, Reports, and Transactions)

37. The allegations in Paragraphs 1 through 22 are realleged and incorporated as if fully set forth here.

38. Beginning in or about June 2008, and continuing through in or about November 2009, both dates being approximate and inclusive, in the Northern District of California and elsewhere, the defendants,

EBRAHIM SHABUDIN and
THOMAS YU,

knowingly and willfully made false entries in books, reports, and statements of the Bank with intent to

injure and defraud the Bank, and deceive an officer of the Bank, the Comptroller of the Currency, the FDIC, an agent and examiner appointed to examine the affairs of the Bank, and the Board of Governors of the Federal Reserve System, and did aid and abet in the same.

All in violation of Title 18, United States Code, Sections 1005 and 2.

<u>FORFEITURE ALLEGATION</u>: (18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461)

39. Paragraphs 1 through 22 of this Superseding Indictment are realleged and incorporated as if fully set forth here for the purpose of alleging forfeiture pursuant to the provisions of 18 U.S.C. § 981(a)(1)(C).

40. Upon a conviction for any of the offenses alleged in Counts One through Seven, the defendants,

EBRAHIM SHABUDIN and<br>THOMAS YU,

shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to said offense, including but not limited to a sum of money equal to the total proceeds from the commission of said offense.

41. If, as a result of any act or omission of the defendants, any of said property

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to or deposited with, a third person;

(c) has been placed beyond the jurisdiction of the Court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty;

any and all interest defendants have in any other property up to the value of the property described in Paragraph 41, shall be forfeited to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C), as incorporated by Title 28, United States Code, Section 2461.

All in violation of Title 18, United States Code, Sections 981(a)(1)(C), 1348, 1349; Title 28,

United States Code, Section 2461; and Rule 32.2 of the Federal Rules of Criminal Procedure.

Dated: March 11, 2014                    A True Bill.

_____
FOREPERSON

MELINDA HAAG
United States Attorney

_____
J. DOUGLAS WILSON
Chief, Criminal Division

Approved as to form:

_____
ADAM A. REEVES
Assistant United States Attorney

SUPERSEDING INDICTMENT
CR 11-0664 JSW

12